Please the court. Good morning, Your Honors. Morning, Counsel. Stuart Flashman for the petitioners and also at the council table is Douglas Carstens, my co-counsel. I want to start discussion today by identifying for the court some new information that the court may not yet be aware of. One of those pieces of new information has to do with the case Friends of Eel River versus North Coast Rail Authority, which as the court is aware, covers really pretty much all of the same issues that this case does. And that case has to be decided by August 3rd or 4th? It's going to be decided by August 3rd. And it's 90 days? Correct. All right. What is the, what will be the effect of that case upon this one? Well, that depends on what the case is. Either way, either way, whichever way. Because there are issues in that case, as there are in this case, that could decide the case entirely on state court grounds. In particular, an argument that I will make this morning is that CEQA, as it applies to the ICCTA, is not a regulatory statute. And if it's not a regulatory statute, obviously it isn't preempted. And that, the decision as to whether CEQA as applied to the ICCTA is a regulatory statute, that's a state court issue. And it could be, if the court decides, if the Supreme Court decides that actually, as CEQA applies under the ICCTA, it doesn't regulate. Does that boost your market participant exception? That's a different, there are really three different reasons why we believe that CEQA, as applied here in this case, is not a regulatory statute. But one of them is more general than the other. You're talking about if you win in the California Supreme Court. That's right. What happens if you lose in the California Supreme Court? If we lose in the California Supreme Court, then basically all of the issues I hear before you. My suggestion would be you may want to ask for supplemental briefing after that case comes up. Well, yes. But in the meantime, and we might want to wait, certainly, until August 2nd. Yes, Your Honor. But, or first, I think you said, whichever it is, 90 days. We'll wait to 90 days. But my question for you is, if you were to lose in the California Supreme Court, what would the result, what impact would that have on this case? I think it would be simply another court decision that you would have to take into account on the federal issues in terms of deciding do we agree or disagree with what the California Supreme Court decided. Because they are federal issues, and therefore, there are issues that this court considers separately, you know, it certainly takes into account those California Supreme Court issues to support Supreme Court decisions. That's my, does it really matter how that case turns out? Because the authority is going to maintain its position. I mean, strike that. The board will maintain its position that it's preempted. And it will not, I mean, it will just maintain that position throughout, and that's not a question of state law. Well, if, I think the answer would be that if the California Supreme Court decides the Friends of Yule River case on state, on the state law issue, then this court could say, given that this case can be sided on a state law issue. But the state court can also decide federal issues. They can, but that's not dispositive in federal court, on a federal issue. That can go ahead and get appealed to the U.S. Supreme Court. It can be appealed to the U.S. Supreme Court. If it's a state court grounds. But not to this court. No. I was going to ask, is the federal issue raised before the California Supreme Court? It is. And if the state Supreme Court decides that issue, that can be appealed to the U.S. Supreme Court. That's correct. Yes, but not to this court. No. And obviously, if this court and the California Supreme Court disagree on a federal issue, that's probably going to end up going to the U.S. Supreme Court. I can't guarantee it. Obviously, that's up to the U.S. Supreme Court, or at least five justices, to decide that. But nevertheless, it certainly suggests that there would be an issue here, especially given that this is, at least in large respect, excuse me, this is a case of first impression, as is the Friends of Yale River. So there are reasons why the U.S. Supreme Court might want to take it up, particularly if there's a disagreement between the two courts. But if the California Supreme Court were to decide the issue on a state law, based on a state law issue, that couldn't be appealed to the U.S. Supreme Court, because it's a state law issue. And what is your position on jurisdiction over the declaratory order? Your Honor, we think that the, we tend to agree with the California High Speed Rail Authority on that, that we think it probably is a valid declaratory order that the court should take up. However, and I'll get to that, actually, in a moment, because that's the second piece of information. Because the other thing that's happened recently that was not, had not happened when the briefing was going on, is that the California High Speed Rail Authority has begun using the Proposition 1A bond funds for rail construction, which now triggers all of the requirements under Prop 1A, including the requirement for CEQA review. Is that a different lawsuit? In a sense, it is. In a sense, it was one of the points we raised, which is essentially that, in one sense, the High Speed Rail Authority has contractually committed itself to CEQA review. And as the STB brief acknowledges, that's a state court issue entirely, and not something that we need to decide in this case. Because, essentially, if the courts were to determine that the High Speed Rail Authority had indeed committed itself, which, in fact, the Town of Atherton case suggested, if it had, in fact, committed itself to undergoing CEQA review, then, essentially, under the rule that says that an agency can commit itself voluntarily, in spite of ICCTA preemption, then it's not a federal issue anymore. It's a state court issue. So that's something new and something the court may want to consider. But again, as you say, it's not necessarily determinative. But I thought it was something the court should be aware of. So is the authority issuing the contracts and putting the construction contracts in place? Yes. They have started spending the bond money on the construction. Because, essentially, some of the federal funds, the funds that were issued in the name of the act. But at any rate, there was a bond issuance. There was a grant from the Federal Railroad Administration that was part of the initial Obama administration. I'm blanking on the term. Sorry. But at any rate, it was done at the start of the Obama administration to try and get the country out of the Great Recession. And those funds are expiring at the end of August, or actually the end of September. But they have really now all been spent. Are they matching? Is that why? That's right. Okay. So these funds now need to match those funds. Right. So has actual construction begun?  Actual construction began, I believe, last year, maybe even a year and a half ago. But it is well underway in and around Fresno. And, again, the CEQA cases have been stayed pending the decision in Yule River, depending on what the decision in the real Yule River. Seven or so? Seven other CEQA cases around the line? Those cases have all been stayed in the trial court. They're all waiting just for Frens of Yule River. That's correct. That's correct. Although there were six cases filed initially, four of those cases have settled. Oh, they've settled. And so there are two cases still outstanding and still active and staying. Excuse me. And, actually, that brings me to one of the points that the respondents and the high-speed rail authority argue that this is a categorically preempted, CEQA is categorically preempted because it's a preclearance statute. But as applied to this particular situation, it's not clear that that's the case. In fact, I would say it's not the case. And I think we can compare that with the situation if this was involving a private rail line and CEQA application to a private rail line. What you would have in that case is you would have a... Because CEQA only applies to discretionary governmental decisions that could have a significant effect on the environment, it would mean they would have to have been a government agency attempting to make a decision on that rail line, which generally would be issuing some sort of a permit. But under ICCTA, that permit itself would be preempted. And if the permit is preempted, there's nothing to do CEQA on. So it's not really a matter that CEQA is preempted. It's a matter that because the permit that the CEQA would apply to is preempted, there would be no CEQA review. So here we have something different because here we have the agency applying CEQA to its own action, not to someone else's action. And that makes it a very different situation. And because obviously if it's proper for the agency to make the decision about its own project, then CEQA should apply unless it's preempted. And the argument we make is that under CEQA, under the CEQA statute, particularly public resources code section 21-080 subsection A, an agency has to look at alternatives and mitigation measures if they are feasible. But a mitigation measure or alternative need not be analyzed if it is infeasible. And one of the reasons why it could be infeasible is legal infeasibility. And our position is basically that if the STB has made a decision, and that's a binding decision, saying this project can go forward, then something that would conflict with that decision is not legally feasible. And consequently, it doesn't need to be considered and shouldn't be considered. And indeed, if someone sued to try and get that to be considered, the proper course for the trial court would be to say no, that's legally infeasible, you don't get that. What that means then is from the standpoint of an injunction, which is what the High Speed Rail Authority and supposedly the Federal, the Surface Transportation Board are concerned about, if there's going to be an injunction, that has to follow all of the ordinary rules for an injunction. So it can't issue unless the plaintiff has a likelihood of success on the merits. But if the issue is something that's legally infeasible, there is going to be no success on the merits. There can't be, because it's not the agency's decision to not do that was proper. And consequently, an injunction would not issue. So from that standpoint, there's nothing to be worried about, to be afraid of, from having a CEQA case move forward. And I might point out that, again, four of these cases, the CEQA cases, have settled. Well, they have settled, but the High Speed Rail Authority has not changed its project. So it says even if you file a CEQA complaint and you maybe rattle a saber about injunction, it doesn't mean there's going to be an injunction. It means that everything else, if everything else happens to fall in line, yeah, maybe you might get an injunction. But it's certainly not an automatic, oh, there's going to be an injunction, we should stop this. It should be, if there's any sort of a challenge, it has to be an as-applied challenge. The decision that the STB made here, that it's blanket preemption, was far, far too broad. And indeed, even if they won a case on CEQA grounds, under 21168.9, which governs the remedies, that was amended quite a few years ago to say that no, you only get to apply the remedies necessary to achieve CEQA compliance. Which means you only get to do an injunction if you absolutely need an injunction to get CEQA compliance. If an injunction is not needed, you don't get it. And the Poet LLC case is a clear example of that, where the court found noncompliance with CEQA, but it looked at what was the regulation that was being approved, which had to do with the low carbon fuel standard, and said that's a good regulation. We're not going to throw out the baby with the bathwater. We're not going to throw out that regulation because you didn't comply with CEQA, because that regulation is doing good. So we're going to leave that regulation in place while you redo your CEQA analysis and see if that changes anything. And the same would happen here. If you had the rail project moving forward, and the court at the end of the day said, you had a CEQA violation here, but maybe we can cure that CEQA violation without having any effect on this project. So, for example, maybe it was traffic congestion. And maybe we can say, you go back and look at that traffic congestion, see if there's something that can be done about it. But meanwhile, we're going to let the construction go forward, because that's not the issue. The issue is the traffic congestion that might happen after you finish the construction. You have five minutes left. Do you want to save it for rebuttal? Yes, I will save that for rebuttal. Thank you. Thank you. Good morning, your honors. May it please the court, my name is Barbara Miller, and I am here on behalf of respondents, the Surface Transportation Board, and the United States of America. Respondents would like to reserve five minutes of their time for the Intervenor California High Speed Rail Authority to have an opportunity to speak. All right, well, you should stop when there's five minutes left. I will certainly do my best, your honor. Excuse me. The question before the court today is a relatively simple one. Did the Surface Transportation Board abuse its discretion when it relied on well-settled precedent to determine that CEQA, a state environmental pre-clearance statute, was preempted as it applies to the California High Speed Rail project? Is that issue presented to the California Supreme Court in the pending case? I'm sorry, I couldn't hear you, your honor. Is that issue presented to the California Supreme Court in the pending case? The issue of whether CEQA applies to a state construction project is before that court. Whether, with respect to this particular project, those facts are not before the California Supreme Court. I thought the case involved this particular project. No, the case in front of the California Supreme Court right now involves a separate project that also involves a state-run railroad. And the intermediate appellate court in the Eel River case, the one pending before the Supreme Court, the court came to a different legal conclusion than a different California appellate court. And presumably that is the reason the California Supreme Court took the appeal. Will the, if the Supreme Court, California Supreme Court said in that case that it was preempted, would that apply to this case? It would depend on the specific grounds for that decision, I think, your honor. It's hard to predict how narrow or how broad that court is going to make its findings. And I also think that what the Surface Transportation Board did here was offer its opinion as guidance to that court. And whether we appropriately did so is the question before here, before the court here. Well, that brings up the question of whether this declaratory order is a final agency action that we have jurisdiction to review. I think, I agree, your honor. And what the Surface Transportation Board did when they issued this decision is the board used different language than it usually does when it issues a declaratory order. Specifically stated- My question was, is it final agency action? I think the question here is, is the California, is the board going to take an additional state administrative action here? No, so the question is whether this case satisfies the second prong of the Bennett test as to the legal effects. If it altered legal consequences. Correct, and the board's position is that when you look at the pending state legal actions, which is what we believe is the relevant factors to look at in terms of legal effects, our decision had no effect on the pendency of those actions. No court said the board has issued its decision on this and therefore we can move forward because we know whether- So you think we don't have jurisdiction over this case? I think that if you limit your inquiry to the legal effects to those cases, then this court could conclude that there is no reviewability. California High-Speed Rail Authority takes a different position that you can look at additional factors. When I think it is on the California High-Speed Rail Authority to establish that those constitute legal effects that are sufficient to satisfy the second prong of the Bennett test. With respect to the question that I think is before the court here as to whether the board properly applied and followed well-settled precedent. Well, not really. If we don't have jurisdiction, then we don't get there. You are correct, Your Honor. And as I said, the board is of the opinion that unlike most of the orders that the board issues, this was intended as an advisory opinion to provide the Supreme Court, the California Supreme Court that is, with the board's expertise on this subject. Why did the board even need to do that? We have City of Auburn case that expressly says almost what the board did here. We agree with you that the issue is and should be settled by City of Auburn. But because there is a difference of opinion among the California Intermediate Courts, and the California Supreme Court was considering this issue, and because there were multiple, at that point in time, CEQA lawsuits. So why didn't the board just file an amicus brief with the Supreme Court? Because, one, the Supreme Court case is not the only case pending on this issue. There are multiple trial court actions pending. And we also, we had parties coming before the board asking us to take action on this. And therefore, the board felt that the appropriate action was to issue a declaratory order as guidance so that the California Supreme Court could benefit from our expertise. Well, that brings me back to my question. If you were so interested in what the California Supreme Court thought about life, what, and the California Supreme Court tells you what it thinks in a week or two. What effect will that have on this case? Again, I think that depends on the- Well, let's say that they make a broad statement about preemption, either way. Either that it's the, that the California rules are preempted, or that they're not. If they may, I'm sorry. Would you just assume both? And what effect will that have? If the, if the court issues a, that type of broad sweeping opinion, then I think that this court, because both the board, and therefore this court, and the state courts have concurrent jurisdiction on the question of preemption. That this court could choose to move forward and issue a decision on the grounds that it was not moot for them to do so. So you think it doesn't matter what the California Supreme Court says? But you wanted to give them a lot of guidance, just. As I said, I think the court, I do think it would be reasonable for the court to go either way on that question. Whether they felt that since the board's opinion was merely intended as an advisory opinion for the court in this, for the California Supreme Court in this instance. You're telling us that now. Did you tell us that in your brief? Did we specifically address the effect of the California Supreme Court if that decision came out before yours? No, no, no. Did you tell us in your brief that, that we don't have jurisdiction over this? What we said in our brief is, is what I said earlier this morning, which is our intent was to issue an advisory opinion. Our language in the opinion used language such as, we are issuing this opinion to assist the California Supreme Court. To provide guidance, to help the parties and the Supreme Court in the resolution of this issue. And that if you look at the effect of our decision on the legal actions in California, that there has been no change or legal effect, and that therefore this court- Where did you say that? I don't have our brief in front of us. If I can grab it, Your Honor, I can give it to you. Yeah. Twenty-four. We addressed it relatively early in the hearing. And I believe that our discussion of that started on page 20. And continued on 21 and 22. And we did say that our, that the court could find that the board's advisory declaratory order has no legal effect on the parties. We make that statement on page 20. And we go on to explain the rationale that I have just explained now. And conclude that the court could determine that the order is not reviewable because it was issued- It's not very satisfactory to be told that we could find something or we could not find something. It would be a lot more helpful, and I think that it was really the obligation to take a position on this question. It's your order. And it seems to me you ought to tell the court, not whether it can find you if order is one thing or another, but at least what you think the order is. And what it was intended to be. Well, I think we have clearly stated what it was intended to be, which was an advisory opinion for the California Supreme Court. And again- Do you think that we could say that you issued something other than an advisory opinion by mistake? By mistake, Your Honor? Well, you said you were trying to issue an advisory opinion. That's what it was intended to be. That is. And should we say you didn't know what you were doing? And instead you issued a declaratory judgment type order. Again, clearly the board feels that it communicated its intent in that order. If you look at- Well, then you should take the position that it is just an advisory opinion. Right. If you think that's what you intended and that's what you did, then why don't you say that's what it is? That is what we intended. We think we did that. We think if you look at the appropriate legal effects, that there are no legal effects from our opinion. The California High-Speed Rail Authority has taken the position that there are other effects that are relevant. And I think it is up to the California High-Speed Rail Authority to establish that those effects are sufficient to satisfy- Okay. So you think we have no jurisdiction over this case? I think if you find that our opinion- Not if we find. Do you have an opinion? Your agency have an opinion on what it did? The agency believes that it issued an advisory opinion. Okay. So then your position is that we have no jurisdiction if it's an advisory opinion. Yes, Your Honor. So you might as well sit down and let us hear from you. Yes, I'm sorry. It doesn't matter what else. You know. If Your Honors feel that is the primary legal question, I certainly will- Well, jurisdiction is always- Well, yes. It is the first question. If you are to determine that you do have jurisdiction and you, well, I don't think you should disagree with respondents, then there are obviously other issues before the court. Are you before the- Did you file anything before the California Supreme Court and the Friends of Yellow River? We did not. Okay. So if the California Supreme Court, in that case, decides that CEQA is not preempted, you won't be able to appeal that? That is correct, Your Honor. All right. Interesting legal strategy. Okay. Well- You've only got two and a half minutes anyway. All right, Your Honor. You can, if you want to use your two minutes because you have something important to say about the other issues if we have jurisdiction. I will keep it simple, Your Honors, and simply say that as I think acknowledged by the panel already, City of Auburn does decide this issue. This type of statute is categorically preempted. This court has decided that both in City of Auburn and reaffirmed it in Oregon Coast. The fact that this is a state construction project does not change the court's analysis. It does not mean that there is a Tenth Amendment violation and the market participant doctrine clearly does not apply here. As a result, if this court finds that the order is reviewable, the Surface Transportation Board and the United States of America ask that the court affirm the board's decision. Thank you. Good morning, Your Honors. May it please the court. California Deputy Attorney General Denae Aitchison on behalf of the intervener in this case, the California High-Speed Rail Authority. I'd like to jump in immediately on the jurisdiction question and attempt to address the questions that the court has posed on finality and reviewability of the declaratory order. With due respect to my colleague from the board, the board's intent and the label that it puts on its order is not dispositive of reviewability. This court needs to apply the test in Bennett v. Sphere. Based on the facts before you, there is no dispute that the declaratory order was the consummation of a declaratory order proceeding before the board. My client, the Rail Authority, petitioned for that order. The board opened a proceeding, took public comment, issued a decision. There was notice in the Federal Register, and it's done. It's not tentative or interlocutory. The real issue at hand is whether or not the order has any legal consequence. The Rail Authority's emphatic position is that it does have legal consequence to my client. The Rail Authority petitioned the board in October 2014 because it was in the very unusual position of having received board construction authority to build the Fresno to Bakersfield rail line pursuant to the board's jurisdiction under 10501b2 and its licensing procedures in 10901 and exemption authorities in 10502. Having done that, it was also faced with seven CEQA lawsuits in state court seeking to collaterally attack the very same rail line construction. The authority had to make decisions about design-build contracts to the tune of multi-billions of dollars, and it needed to have a better understanding before entering into those contracts as to whether or not it had a credible preemption defense to an injunction in the state court proceedings. And so for that reason, there is an effect on the day-to-day business of the authority akin to that in the frozen foods case. And an additional very important point, Your Honors, is that the authority was faced with a situation where it needed to provide something to the trial court on this issue. In the town of Atherton case, the state appellate court did not find preemption under the ICCTA in that case and dropped a footnote advising the authority that if it wished to raise a preemption defense in state court, its recourse was to go to the board for a declaratory order just as occurred in the city of Auburn case. The court identified the board's expertise on this particular issue indicating that the board's determination has some weight and that it would have a legal consequence in the state court proceedings. Was that the Atherton case that had that footnote? Yes, Your Honor. That is the town of Atherton's state court case cited in the intervener's brief, and frankly, I believe in all of the briefs. And I believe it is footnote 4 of that case. The authority would submit that this case is no less final, the order here is no less final and reviewable than the one that this court reviewed in the Auburn case. This is not an informal letter. This is a final determination by the board. And if the court has no further questions on that point, I'd like to just briefly touch on a few issues that have been raised to clarify some facts. In response to the timing of the Eel River decision, my reading of the timeline and the 90-day period running is that the decision is due on August 3rd. My colleague said August 1st, but it's imminent. There is no doubt about that. I'd also like to clarify that the High-Speed Rail Authority is not before the Friends of Eel River California Supreme Court as a party in that case because it is about a different project. That case is involving similar, not coextensive issues, legal issues, but it has nothing to do with the Fresno to Bakersfield Rail Line construction project that the board licensed in August of 2014. It involves the North Coast Rail Authority, again, another public agency railroad. It's almost an idiosyncrasy that these are happening close in time with two public agency railroads. But in the event the court issues a decision either favorable on the preemption question or unfavorable to the preemption question, the legal effect for the High-Speed Rail Authority is that it will deliver that decision from the California Supreme Court. It's already delivered the board's declaratory order to the trial court dealing with its secret cases. If there is a decision on the merits from this court, all of that will go in front of our trial court judge who is addressing the remaining three of the original seven secret cases. Finally, Your Honors, this case is unique. It involves a public rail carrier. It is not an issue that the board has directly addressed, and yet there is numerous court precedents that we think are very, very important in this case. And we would really emphasize that City of Auburn, this court's decision in Alaska Survival dealing with another rail licensing case, the Oregon Coast Scenic Railroad case, which did not have a holding about a public carrier but had some dicta in it about a public rail carrier being under the board's jurisdiction. We think those cases are very, very helpful here. If there are no further questions, I will stop. Thank you, Judge. Thank you. Good morning again. And obviously I think jurisdiction is a very important question. It's always a very important question. And I find it very interesting that the Service Transportation Board has at this point finally admitted that they intended their order to be only advisory. If you read the order, it's not clear that it's advisory. They say that they are making this order to clarify the interpretation of the ICCTA, but they don't say who that is intended to be for. Is that clarification intended for the High-Speed Rail Authority? Is it intended for a trial court? Is it intended for the California Supreme Court? In the decision, it's not clear. And it may be that it's intended for more than one of those. Well, the authority said it filed something with them asking them to make this order. I'm sorry? The authority says it filed a petition or a request that they issue an order on this and that they accepted, I guess, briefing from a lot of different people, right? But the problem is that the order that the STB issued is not responsive to the petition. The High-Speed Rail Authority filed a petition saying, we want you to determine whether it's proper for a third party to get injunctive relief on this rail line that's currently under consideration and that we are trying to find out whether we have to worry about an injunction. They didn't answer that question. They said, oh, CEQA is entirely preempted for the entire high-speed rail system. So they answered the question and more? I'm sorry? They answered a different question. The question they answered is a broader question. We think they answered it incorrectly. But they certainly didn't answer the question that was requested of them in the petition and arguably the answer they gave was because it wasn't an answer to what was petitioned for it was an advisory response rather than a definitive response intended to influence what happened in the trial court. So it's hard to know what to make of that and particularly now that the STB is saying oh, it was only intended to be advisory. As Justice Reinhart said maybe they made a mistake and what do we do now if they made a mistake? I don't know the answer. However, I do feel that for a variety of reasons and I don't have time to go through them all but basically this is very different than the City of Auburn case. It's very different because we're dealing with CEQA rather than with a city attempt to apply what was clearly a pre-clearance statute. In City of Auburn the city was basically saying we need to give you this permit. If we don't give you this permit, you can't go ahead. That's not what CEQA is about. CEQA is primarily about saying look before you leap. Understand the consequences of your actions before you go ahead and make a decision. It's only if there are feasible alternatives or feasible mitigation measures that it directs you to do something about it. If there aren't feasible mitigation measures or feasible alternatives, you go ahead and maybe you do a statement of overriding considerations but you don't have to stop what you're doing. And in addition here we have the market participant exception and from the standpoint of the third party legal actions, those were contemplated by the legislature. The legislature when it set up CEQA said we're not going to depend on the Attorney General to enforce this. We're going to allow citizen enforcement because that's a much more economical way of enforcing this statute than requiring the Attorney General. They could have said this can only be enforced by the Attorney General. If they did that, the Attorney General would have an enormous workload and they really wouldn't have been able to rely on the Attorney General to do that and they knew that. So they said we're going to let private parties enforce this because we can expect these private parties and it's been very successful. Private parties have done a tremendous job of enforcing CEQA and getting CEQA compliance. And the fact that four of these lawsuits settled says you can get CEQA compliance without any injunction. You can get an agreement from the parties that we're suing that's saying we're okay, you can go ahead. And that didn't require any injunctive relief. And there's nothing that says you're going to end up with an injunctive relief. If you look at the Poet case if you look at the Laurel Heights case those are cases where the court said we find a CEQA violation but we're not going to enjoin things because that's not what we're about. We're about enforcing CEQA, not issuing injunctions. And if we don't have to issue injunctions, we won't. And I think the same would happen here. Thank you. Thank you all. The case just argued will be submitted.
judges: Reinhardt, Fernandez, Wardlaw